UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
:
WALTER L. ANDERSON,                               12-CV-1055 (DLI) (ST)
:
                Plaintiff,
:
   - against-
:
PHOENIX BEVERAGES, INC.
:
                Defendant.
:
-----------------------------------------------------------x


**PLAINTIFF'S RESPONSE TO DEFENDANT PHOENIX BEVERAGE
INC.'S OBJECTIONS TO MAGISTRATE JUDGE TISCIONE'S REPORT AND
RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


LINCOLN SQUARE LEGAL SERVICES, INC.
150 West 62nd Street, 9th Floor
New York, NY 10023
212-636-6934

Attorney for Plaintiff, Walter L. Anderson

By:   Michael W. Martin, Esq.
        Ian Weinstein, Esq.
        Nathaniel Black, Legal Intern
        Samuel Weiss, Legal Intern

August 14, 2017

**TABLE OF CONTENTS**

Introduction………………………………………………………………………………….…1

I. DEFENDANT MINIMIZES GENUINE ISSUES OF MATERIAL FACT BY IGNORING AND MISCHARACTERIZING THE RECORD…………………………………………….2

    A. Testimony From Several Witnesses Recounts the Use of Racial Slurs, Including "Nigger," In the Warehouse……………………………………………………….………2

    B. The Claimed Absence of Evidence Shows Little; The Affirmative Evidence Presents a Triable Issue of Fact………………………………………………………………………….5

II. MR. ANDERSON'S CLAIMS ARE TIMELY…………………………………………...6

    A. The 300-Day Requirement is Met……………………………………………………….6

    B. Defendant Waived the 300-Day Argument Claim………………..……………....…8

Conclusion……………………………………………………………….……………...…9

# **TABLE OF AUTHORITIES**

**Cases**

*Blake v. Race*, 487 F. Supp. 2d 187 (E.D.N.Y. 2007) .............................................................................. 5
*Collins v. N.Y. City Transit Auth.*, 305 F.3d 113 (2d. Cir. 2002).............................................................. 1
*Crump v. NBTY, Inc.*, 847 F.Supp.2d 388 (E.D.N.Y. 2012)..................................................................... 3
*Glaves-Morgan v. City of N.Y.*, No. 11-cv-1248, 2012 WL 951859 (S.D.N.Y. Mar. 21, 2012).... 3
*Kennedy v. Adamo*, No. 02-cv-1776, 2006 WL 3704784 (E.D.N.Y. Sept. 1, 2006) ....................... 8
*McGullam v Cedar Graphics*, Inc., 609 F3d 70 (2d Cir. 2014)............................................................. 7
*Nat'l R.R. Passenger Corp. v. Morgan*, 536. U.S. 101 (2002)............................................................... 6
*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).............................................. 1, 2
*United States v. Rem*, 38 F.3d 634 (2d Cir. 1994) .................................................................................. 2
*Wesley v. Alexander,* No. 99-cv-2168, 2005 WL 1352593 (S.D.N.Y. June 8, 2005)................. 8, 9
*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000) ...................................... 3
*Zaza v. American Airlines,* No. 14-cv-4046, 2017 WL 1076327 (E.D.N.Y. Mar. 22, 2017)......... 8
*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) ............................................................... 8

**Statutes**

Fed. R. Civ. P. 56.................................................................................................................................. 1, 2
Fed. R. Civ. P. 72....................................................................................................................................... 1
42 U.S.C. § 2000e-5(e)(1)) ..................................................................................................................... 6

**Introduction**

Mr. Walter Anderson submits this Response to Defendant Phoenix Beverage, Inc.'s Objections to the Report and Recommendation of United States Magistrate Judge Steven L. Tiscione, issued on July 17, 2017 ("R&R"), pursuant to Federal Rule of Civil Procedure 72(b). In its struggle to overcome the R&R's reasoned findings regarding Mr. Anderson's hostile work environment ("HWE") claim, Defendant misanalyses the record, urges this Court to make impermissible credibility determinations at summary judgment, and raises a procedural claim not argued before Judge Tiscione. Defendant's Objections chart a course for cross-examination at trial, but do not marshal an adequate case for summary judgment. There are genuine disputes as to material facts regarding Defendant's agents subjecting Mr. Anderson to pervasive racial hostility. Judge Tiscione correctly recommends denial of Defendant's motion on the HWE claim.

Throughout this litigation, Defendant has trumpeted a counter narrative long on invective but loose with the record,[1] claiming disputed facts are undisputed (Def.'s Objs. 5, ECF No. 110) and harshly attacking Mr. Anderson in the hopes that maligning Mr. Anderson's character will shield Defendant from liability. Defects in Mr. Anderson's credibility could be explored at trial, not here. Urging the Court to discredit the non-movant's testimony (*see infra* at 2) and credit the denials of racially charged activity is urging reversible error. Def.'s Objs. 13. Drawing all reasonable inferences in favor of Mr. Anderson, *see* Fed. R. Civ. P. 56; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), the summary judgment motion must be denied.

---

[1] As part of this rhetoric, Defendant spotlights the length of this litigation (Def.'s Objs. 1), but ignores the meritless steps Defendant has taken to prolong the proceedings. These steps include seeking pre-discovery dismissal and denial of discovery based on *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113 (2d. Cir. 2002), a case that deals with summary judgment *after* discovery (*see* Def's Mem. of Law in Opp'n to Pl.'s Mot. for Leave to File Am. Compl. at 6, ECF No. 13; Resp. in Opp'n to Mot. to Compel Disc. at 3, ECF No. 40); refusing to permit deposition taking (Dec. 17, 2013 Tr. of Civil Cause for Mot. Hr'g Before the Hon. Robert M. Levy U.S.M.J., 19, ECF No. 43 ("The Court: … I think you're asking me to be a judge of the facts of this case without having given the plaintiff an opportunity to take reasonable discovery")); and seeking sanctions against opposing counsel without any reasonable basis (R&R 53-54).

I. **Defendant Minimizes Genuine Issues of Material Fact By Ignoring and Mischaracterizing the Record**

The R&R correctly analyzes the record to find that Mr. Anderson's HWE claim must be heard by a jury. Defendant misanalyses the record and asks the Court to make impermissible inferences at summary judgment. In doing so, Defendant ignores the Federal Rules, *see* Fed. R. Civ. P. 56, and caselaw, *Reeves*, 530 U.S. at 150 (stating that at summary judgment "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence"). Defendant flies in the face of the law to pursue a counter-factual narrative, asking this Court to make credibility determinations, an issue of fact for the jury. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (stating "on a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried.").

A. **Testimony From Several Witnesses Recounts the Use of Racial Slurs, Including "Nigger," In the Warehouse**

Despite the R&R's conclusion that "there is ample evidence that racial slurs were used on Phoenix's premises," (R&R 30), Defendant characterizes Mr. Anderson's own affidavit as "the primary basis" for the R&R's finding. Def.'s Objs. 2. This characterization is wrong (and even if correct, would not be legally relevant). *See* R&R 28 n.10 (recognizing that at summary judgment it is improper to disregard an otherwise competent affidavit merely because the affidavit is self-serving). The R&R cites to a wide variety of sources, other than Mr. Anderson's affidavit, including the affidavit of Juan Beltre and the depositions of Oscar Ruiz, Mitch Guttman, Percy Perdue, Charles Carter, and Joseph Cassano. *See* R&R 4-9, 30-31.

2

Defendant's claim that Mr. Anderson "tendered no evidence" from any source other than himself, that Mr. Cassano, Mr. Leone, or others, referred to any Phoenix employee as a "nigger" (Def.'s Objs. 13), likewise ignores the record.  Several witnesses support Mr. Anderson's description of the working environment, including: Mr. Beltre, who said under oath that Mr. Cassano referred to black employees as "niggers," (Decl. of Michael W. Martin in Supp. of Pl.'s Opp. to Def.'s Mot. For Summ. J., Ex. B, Aff. of Juan Beltre in Supp. of Pl.'s Opp. to Def's Mot. For Summ. J. ¶¶ 8-12, ECF No. 84-2); Mr. Perdue, who testified that Mr. Leone called him the "N" word in Spanish (Decl. of Eugene T. D'Ablemont in Supp. of Def.'s Mot. for Summ. J., Ex. 7, Dep. of Percy Perdue 55:18-56:25, ECF No. 81-10); and Mr. Guttman, who testified that employees would use the "N" word in the warehouse (D'Ablemont Decl. Ex. 5, Dep. of Mitchell Guttman 111:6-17, ECF No. 81-8).

Claiming, counter to the record, that the word "nigger" was not used, Defendant then overemphasizes the legal significance of this false assertion.  It is well established that an employer need not call an employee the "N" word for a HWE claim or even a racial discrimination claim to survive summary judgment.  *See e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 66-67 (2d Cir. 2000) (denying summary judgment as to HWE even though African American plaintiff was never called a "nigger" in the work place, instead co-worker called plaintiff a "black sheep" and a "lazy black boy").  Indeed, considered in context, even facially race-neutral terms can have racially charged-content.  *See, e.g.*, *Crump v. NBTY, Inc.*, 847 F.Supp.2d 388, 390 (E.D.N.Y. 2012) (assuming for purposes of summary judgment motion that phrase "your kind" had racial content where white manager told African American employee a particular door was not for his use); *Glaves-Morgan v. City of N.Y.*, No. 11-cv-1248, 2012 WL 951859 at *9 (S.D.N.Y. Mar. 21, 2012) (finding that a reasonable juror could infer racial content in the phrase "at least you

3

will not be cleaning washrooms" in the context of a white boss demoting an African American employee).

Nor can the Defendant bleach all animus from this record with implausible claims such as Mr. Guttman's calling the fifty-year-old Mr. Anderson "boy" does not give rise to a reasonable inference of racial animus. Def.'s Objs. 20. The Court cannot credit the movant's denial of a reasonable inference at summary judgment. The record contains other, similar conduct, *see e.g.,* Beltre Aff. ¶ 12 (stating Beltre heard Mr. Guttman call African American employees "boy" at various times while giving orders and commands); Martin Decl. Ex. A, Aff. Of Walter T. Anderson in Supp. of Pl.'s Opp. to Def.'s Mot. For Summ. J. ¶ 22, ECF No. 84-1 (swearing that Mr. Leone called him "boy" while directing him to remove garbage in 2007).

Further, Phoenix knew about the hostile atmosphere and failed to correct the problem. *See* Pl.'s Memo of L. In Opp. To Def.'s Mot. For Summ. J. at 23-24, ECF No. 82. Supervisors, including Charles Carter, Al Rivera, and Lee Battle, openly tolerated the use of racially charged language in the warehouse. *See* Perdue Dep. 63:1-23. Defendant promoted employees known to use racially derogatory language. *See* Anderson Aff. ¶¶ 17-18. Defendant also failed to train supervisors properly about their obligations to create a lawful work environment. *See* Memo. In Opp. at 23-24. Finally, the record supports a reasonable inference that at least one supervisor, Oscar Ruiz, shared the racial animus expressed on the warehouse floor. *See* Pl. Walter L. Anderson's Obj. to R&R at 3-4, ECF No. 109.

Defendant responds to all the record evidence of a hostile work environment by claiming that either other evidence contradicts it ((*see, e.g.*, Def.'s Objs. 20 (Mr. Guttman testified that his use of the word "boy" to Mr. Anderson "was not racially motivated")), *id.* at 22 ("The men accused of making these remarks… each denied making them or denied any racial intent in making them"), or that the speaker should not be believed. *Id.* at 2 (belittling Mr. Anderson's "self-serving"

4

affidavit); *see id.* at 21-22 (dismissing Mr. Beltre as not to be believed); *id.* at 23-24 (alleging Mr. Anderson showed a "propensity for lying"). Defendant's opportunity to argue dispositive inferences from that evidence is at trial.

At summary judgment, courts must leave credibility determinations to the jury, even where impeachment is unusually fulsome. *See Blake v. Race*, 487 F. Supp. 2d 187, 205 (E.D.N.Y. 2007) (declining to make credibility determinations on summary judgment, even when critical witness found to have lied under oath on multiple occasions). In the instant motion, Defendant contends that Mr. Anderson's HWE claim comes down to credibility. *See* Pl.'s Objs., Ex. A, April 13, 2017 Oral Arg. Tr. at 17:12-13, ECF No. 109-1 (stating "Mr. D'Ablemont: What is the foundation for the hostile work environment? You're back to credibility.") The R&R correctly concluded that at summary judgment, it was unable to make credibility determinations, which are within the jury's purview. *See* April 13, 2017 Oral Arg. Tr. at 47:7-12.

B.  **The Claimed Absence of Evidence Shows Little;
    The Affirmative Evidence Presents a Triable Issue of Fact**

Reaching for a new angle at this late stage of motion practice, Defendant would shift focus to a claim about a supposed absence of evidence in electronic discovery. First, Defendant overstates the significance of the lack of racially derogatory language in Phoenix's email archives. Def.'s Objs. 13-14. Defendant did not implement a litigation hold to preserve electronic discovery until, at the earliest, September 2013, nearly five years after Mr. Anderson's termination. *See* Dec. 17, 2013 Mot. Hr'g Tr. at 52:18-25. More importantly, at that time, the people who worked on the warehouse floor, such as Mr. Ruiz, did not use smartphones or email. *See id.* at 53:4-23. Thus, while there were documents reflecting inappropriate and hostile behavior, *see, e.g.,* Guttman Dep. at 119:20-130:13, the likelihood of finding documents in 2014 relevant to Mr. Anderson's 2008 termination—without a litigation hold or regular email communication in the workplace—was low

5

at best. In this case, the absence of this kind of evidence is neither significant overall nor relevant at summary judgment.

Defendant also makes claims based on the assertion that Mr. Anderson never complained or filed a grievance about the abuse he faced. *See* Def.'s Objs. at 8. Again, the record belies the assertion. Mr. Anderson did complain to his supervisors and also filed a formal grievance with his union. *See* Martin Decl., Ex G., Local 202 Grievance Form at 1, ECF No.84-8. Mr. Anderson took the more formal action before his union, a setting in which he believed he would be heard.

## II. Mr. Anderson's Claims Are Timely

### A. The 300-Day Requirement is Met

Mr. Anderson's claims are timely. He filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 3, 2009, 217 days after October 29, 2008, the day that Mr. Cassano made racially derogatory statements to him and Mr. Ruiz threatened to "get rid of him" for complaining about it. *See* Anderson Aff. ¶¶ 37, 56. Under Title VII, a New York plaintiff must file a charge of discrimination with the EEOC or state agency within 300 days of the discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1)); *Nat'l R.R. Passenger Corp. v. Morgan*, 536. U.S. 101, 101 (2002).

This HWE claim was timely because at least one act contributing to the pattern of bad conduct occurred within the filing period, as required by the Supreme Court. *Nat'l R.R. Passenger Corp* at 121 (holding that "a charge alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act [contributing to the hostile environment] falls within the filing period"). The R&R analyzes the record evidence of hostile and demeaning conduct, R&R 28-31, and correctly concludes that at this stage, "there is ample evidence that racial slurs were used on Phoenix's premises". R&R 30.

6

Viewed in context, the events of October 29, 2008—racially hostile remarks from Mr. Cassano and a threat of termination from Mr. Ruiz when redress was sought—were part of a single course of illegal conduct. Mr. Anderson made complaints to Phoenix about the persistent use of racial epithets in the warehouse, on multiple occasions, including ten days before he was fired in 2008. *See* Anderson Aff. ¶¶ 15, 17, 18. He filed his EEOC complaint well within 300 days from the last instance of bad conduct.

Defendant's argument about the 300-day filing requirement makes much of the R&R's discussion of the termination claim. *See* Def.'s Objs. at 9-10, (citing R&R at 37-38). But the Defendant is trying to make orange juice out of apples. Judge Tiscione's observation about the strength of the inference of racial animus as a but-for cause of Mr. Anderson's termination is not legally relevant to the HWE claim. For the HWE claim, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *McGullam v Cedar Graphics*, Inc., 609 F3d 70, 75 (2d Cir. 2014) (quoting *Nat'l R.R. Passenger Corp*, 536 US at 105). The conduct of Mr. Cassano and Mr. Ruiz on October 29, 2008 was part and parcel of the pattern of conduct[2] that injured Mr. Anderson, whether or not it supports his termination claim. The lawfulness of his termination is quite separate from whether or not he suffered from racialized hostility at work.

---

[2] Multiple third parties and even Mr. Cassano himself confirmed Mr. Cassano's reputation for making racially charged statements, s*ee* Pl.'s Objs. 6; D'Ablemont Decl. Ex. 2, Dep. of Joseph Cassano 128:23-130:13, ECF 81-5 (admitting to calling black people who "pissed him off" "niggers," claiming he never did so at work), all of which illuminate his October 29, 2008 "racially derogatory remarks."

7

### B. Defendant Waived the 300-Day Argument Claim

Defendant waived the argument that the HWE claim is untimely by not presenting it to the magistrate judge during the extensive briefing and argument on this motion. The requirement that an EEOC claim be filed within 300 days of the last incident in the pattern is not a jurisdictional prerequisite. *See Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 398, (1982) (holding that 300-day filing period is "subject to waiver as well as tolling when equity so requires"). In other words, the requirement is like a statute of limitation and subject to waiver, equitable tolling and other restrictions. Useful comparison can be made to the requirement for a timely notice of appeal, which is jurisdictional and not subject to waiver or tolling.

Defendant made a generic claim at the pleading stage. *See* Answer to Am. Comp. ¶ 95, ECF No. 33. In its summary judgment papers, Defendant's sole reference to the 300-day argument was in a sentence in its Statement of Facts. *See* Memo in Supp. of Def. Phoenix Beverages Mot. For Summ. J. 16, ECF No. 81-1. Defendant did not address the issue in its Argument section, Reply papers, the two-plus hour oral argument on April 13, 2017, or its post-oral argument submission. Defendant abandoned this claim. *See Zaza v. American Airlines,* No. 14-cv-4046, 2017 WL 1076327, at * 2 (E.D.N.Y. Mar. 22, 2017); *Wesley v. Alexander*, No. 99-cv-2168, 2005 WL 1352593, at *6 (S.D.N.Y. June 8, 2005).

When a magistrate judge hears a dispositive motion, the litigants cannot add new arguments at subsequent stages of the proceedings. *See Kennedy v. Adamo*, No. 02-cv-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal citations omitted), *aff'd*, 323 Fed.Appx. 34 (2d Cir. 2009) (summary order); *see also Zaza*, 2017 WL 1076327, at * 2 (the Court "will not consider arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance."). To allow a party to do so would frustrate

the role that the magistrate judge plays in assuming some of the burden of the Federal Judiciary's burgeoning caseload.  *Wesley*, 2005 WL 1352593, at *6

## Conclusion

For these reasons, the Court should deny Defendant's motion for summary judgment in its entirety.

Date:   New York, New York
        August 14, 2017

                                            Respectfully submitted,

                                            /s/ Michael W. Martin
                                            Michael W. Martin, Esq.
                                            Ian Weinstein, Esq.
                                            Lincoln Square Legal Services, Inc.
                                            150 W. 62nd Street, 9th Floor
                                            New York, NY 10023
                                            (212) 636-6934
                                            *Attorneys for Plaintiff*